KIRA M. RUBEL [CALIF. STATE BAR NO. 253970]
**LAW OFFICES OF KIRA M. RUBEL**
krubel@kmrlawfirm.com
19689 7th Ave. NE, Suite 160
Poulsbo, WA. 98370
Telephone: (800) 836-6531
Facsimile:  (206)-238-1694

*Attorney for Plaintiff*
*STEVEN WATERBURY*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN WATERBURY, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>TRIANGLE CONSTRUCTION, INC.;<br><br>        Defendant. | CASE NO.  **'16CV1946 JLS  DHB**<br><br>Complaint for Damages and Injunctive Relief Pursuant To The Telephone Consumer Protection Act, 47 U.S.C § 227<br><br>**Jury Trial Demanded** |

## Introduction

1.     This is a lawsuit against Defendant TRIANGLE CONSTRUCTION, INC. ("Defendant") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), with respect to Defendant's illegal telemarketing campaign. Specifically, between February 2015 and April 2016, Plaintiff STEVEN WATERBURY ("Plaintiff") received no less than 23 telemarketing calls to his residential telephone from Defendant.  Defendant was marketing its home remodeling

1

1  services, and did so by violating the TCPA, in spite of the fact that Plaintiff's number

2  has been on the national Do-Not-Call list since 2003 and he never otherwise gave

3  prior express consent to receive such calls.

4        2.      Plaintiff brings this lawsuit for statutory damages, injunctive relief, and

5  any other available legal or equitable remedies arising out of the illegal actions of

6  Defendant.

7        3.      Plaintiff alleges as follows upon personal knowledge as to himself, his

8  own acts and experiences, and as to all other matters, upon information and belief,

9  including investigation conducted by his counsel.

10                        **Parties, Jurisdiction and Venue**

11        4.      Plaintiff Steven Waterbury is, and at all times mentioned herein was a

12  citizen and resident of the State of California who resides in San Diego, California.

13        5.      Defendant TRIANGLE sells, vis a vis its telemarketing calls, home

14  improvement products such as new roofing, siding, internal remodeling and the like.

15  Defendant is, and at all times mentioned herein was, a company founded under the

16  laws of the State of California, whose primary corporate offices are located at 11122

17  Washington Boulevard Culver City, California 90232. Plaintiff alleges that at all times

18  relevant herein Defendant conducted business in the State of California and in the

19  County of San Diego, and within this judicial district by telemarketing to Plaintiff by,

20  among other methods, making telemarketing calls to a phone number that (a) was

21  placed on the Do-Not-Call list or (b) for which it did not otherwise given consent to

22  receive telemarketing calls.

23        6.      Jurisdiction is proper under 28 U.S.C. § 1331 as the case involves a cause

24  of action for violations of the TCPA, a federal law of the United States.

25        7.      Venue is proper in the United States District Court for the Southern

26   District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of

27   the events or omissions giving rise to the claim occurred in this judicial district.

    ///

2

**COMPLAINT**
**CASE NO.:**_____

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA) 47 U.S.C. § 227

8.     In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

9.     47 U.S.C. §227(c)(5) provides that any person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may bring a private action based on a violation of the TCPA, as promulgated in the Code of Federal Regulations.

10.     The TCPA was established specifically in order to protect telephone subscribers' privacy rights and help them to avoid receiving unwanted telephone solicitations.[2] "Congress found that consumers consider these kinds of calls, 'regardless of their content or the initiator of the message, to be a nuisance and an invasion of privacy'[.]"[3]

11.     47 C.F.R. § 64.1200(c), provides that "No person or entity shall initiate any telephone solicitation" to " . . . (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

12.     47 C.F.R. § 64.1200 (e), provides that § 64.1200 (c) and (d) are applicable to any person or entity making telephone solicitations or telemarketing calls to telephone numbers to the extent described in the Commission's Report and

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii); See also S.REP. NO. 102-178, 1st Sess. 102nd Cong., at, 4-5 (1991), reprinted in 1991 U.S.C.C.A.N. 1968.

[3] TCPA, Publ. L. No. 102-243, § 2, 105 Stat. 2394 (1991.)

3

**COMPLAINT**
**CASE NO.:**_____

Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991'.

   13.   47 C.F.R. § 64.1200(d) further provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards":

   (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

   (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

   (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such Request.

   (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

4

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

14.     Defendant violated § 64.1200 (c) by initiating more than one (1) telephone solicitation to Plaintiff's residential telephone line within a 12-month period, even though he was registered on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations which is maintained by the federal government.

15.     Plaintiff also *specifically* requested not to receive calls from Defendant, as set forth in § 64.1200 (d)(3).

16.     Defendant and/or its agents made more than one (1) unsolicited telephone call to Plaintiff within a 12-month period without his prior express consent and, in fact, made 23 such calls.  Plaintiff never provided any form of consent to receive telephone calls of this nature from Defendant, let alone prior express consent.

17.     Defendant clearly violated § 64.1200 (d) by initiating calls for telemarketing purposes to Plaintiff's residential telephone without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them, as is evidenced by the fact that Plaintiff repeatedly asked Defendant to stop calling and to send him a copy of their do-not-call policy.

5

1      18.     Defendant also violated § 64.1200 (d) by spoofing its name and phone

2   number which appeared on Plaintiff's caller ID.

3      19.     In addition to violations of Section (c) of the TCPA [hereinafter referred

4   to as the "Do Not Call Provision"], Defendant also violated Section (b) of the TCPA,

5   which generally regulates, among other things, the use of automated telephone

6   equipment, referred to as "ATDS" or "autodialers."[4]

7      20.     The Federal Communications Commission ["FCC"] is the entity charged

8   with interpreting and clarifying the TCPA.  On October 16, 2012, the FCC released a

9   report and order which further clarified the TPCA as it pertains to telemarketers. This

10   Order revised the TCPA to require prior express *written* consent to receive

11   telemarketing calls, repealed the "established business relationship" exception to

12   telemarketing calls, and specifically *included* both autodialed and prerecorded

13   telemarketing calls to landlines as a prohibited practice.[5]

14      21.     Accordingly, Plaintiff seeks to recover damages under both sections (b)

15   and (c) of the TCPA, in what is called "stacking" these provisions. "Congress

16   evidenced its intent that a person be able to recover for the telemarketer's failure to

17   institute minimum procedures for maintaining a do-not-call list as well as the

18   additional harm of the call being automated." Charvat v. NMP, LLC, 656 F.3d 440,

19   449 (6th Cir. 2011.)  District Courts within California have confirmed that the Sixth

20   Circuit's logic in Charvat is sound. "[T]he court finds persuasive the Sixth Circuit's

21   holding that 'the fact that the statute includes separate provisions for statutory

22   damages in subsections (b) and (c) suggests that a plaintiff could recover under both.'

23   " Roylance v. ALG Real Estate Services, Inc., 2015 WL 1522244, *10 (N.D. Cal.

24   March 16, 2015.)

25

26

---

27   [4] 47 U.S.C. § 227(b)(1)(A)(iii).
     [5] In re Rules & Regs. Implementing the TCPA of 1991, 27 FCC Rcd. 1830, 1838,
     (Feb. 15, 2012).

**COMPLAINT**
CASE NO.:_____

**Factual Allegations**

22.   At all times relevant, Plaintiff was a citizen of the State of California. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

23.   Defendant, at all times mentioned herein, was an entity that meets the definition of "person," as defined by 47 U.S.C. § 153 (39).

24.   At all times relevant, Defendant conducted business in the State of California and in the County of San Diego, within this judicial district.

25.   From February 2015 through February 2016, Plaintiff received telemarketing calls from Defendant on numerous occasions, and has, at the time of filing this complaint, received 23 telemarketing calls from Defendant.

26.   Plaintiff believes all of these calls were made using an ATDS, based on the "dead air" he heard when answering the phone, prior to being connected to a live telemarketer. On more than one occasion, Plaintiff noticed that the phone call would be silent, then connect to a loud room of people, although no one would actually "answer" the phone, further confirming his suspicion that these calls were made by ATDS.

27.   These telemarketing phone calls were the first time Plaintiff was made aware of Defendant's business or had any interaction with Defendant whatsoever. Plaintiff never gave his prior express consent to receive these unsolicited telemarketing calls from Defendant.  Plaintiff has never used any services offered by Defendant and had no pre-existing relationship with Defendant.  In fact, Plaintiff does not know how Defendant acquired his telephone number.

28.   Plaintiff has picked up several of these harassing telemarketing calls from Defendant.  On one occasion, Plaintiff listened to Defendant's employee's sales pitch, firmly told Defendant that he was on the National Do-Not-Call registry, to add his number to Defendant's internal do-not-call list, and never to call

7

again. However, Plaintiff received numerous subsequent calls. Defendant's harassing, unsolicited telemarketing calls to Plaintiff continued unabated.

29.   During one such phone call, Plaintiff asked for the name of the company. Defendant's employee told him it was Triangle Construction, and gave the California State Contractor's license number of #746214.

30.   Defendant never obtained Plaintiff's prior express consent to receive telemarketing calls of this nature.  Notwithstanding the fact that Plaintiff did not provide Defendant with his telephone number at any time, Defendant, or its agents, have called Plaintiff on his residential telephone for the purposes of telemarketing, using an ATDS, even though Plaintiff's phone number has been on the national do-not-call registry since 2003.

31.   Defendant's acts constituted a significant and real invasion of Plaintiff's privacy. In fact, Defendant's acts interrupted meal times and time that Plaintiff intended to spend with his family.

32.   Defendant made more than one telemarketing call to Plaintiff within a 12-month period, in violation of §227(c)(5).

33.   Defendant has not implemented reasonable practices or procedures to prevent telephone solicitations in violation of the TCPA, pursuant to §227(c)(5).

34.   Defendant provided a spoofed caller ID during its illegal telemarketing calls, failed to provide Plaintiff with its "do not call" policy, failed and refused to place Plaintiff on its internal do-not-call list, and continued to make unsolicited telemarketing calls to Plaintiff, all in violation of §64.1200(d).

35. Accordingly, Defendant violated 47 U.S.C. § 227(b)(1)(A) and (c)(5) because Plaintiff received more than one telephone call within a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200 and because these calls were made using an ATDS.

COMPLAINT
CASE NO.:_____

36. These calls caused tangible harm because they constituted a significant invasion of Plaintiff's privacy by, among other things, interrupting his time spent with his family and invading the privacy of his home.

37. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under sections 47 U.S.C. § 227(b) and (c), is entitled to receive at least $500 in damages for each violation of subpart (b) and each violation of subpart (c) for a total of $1,000 per phone call.

38. Plaintiff also alleges that Defendant's misconduct was willful and knowing. From the very first phone call, Plaintiff informed Defendant that he was on the Do-Not-Call registry, to stop the harassing telemarketing calls, and to place him on Defendant's internal do-not-call list. He repeated this message frequently. However, despite Plaintiff's clear warning, Defendant continued to make the illegal calls to Plaintiff.  Under §227(b)(3) and (c)(5), the Court can and should treble the damages for each of the 23 violations, or $3,000 per phone call.

## FIRST CLAIM
### Negligent Violations of 47 U.S.C. 227

39.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

40.   The foregoing acts and omissions by Defendant constitute numerous and multiple negligent violations of the TCPA, and specifically, 47 U.S.C. § 227(b)(1)(A) and (c)(5).

41.   As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each violation of 47 U.S.C. § 227(c)(5) and $500.00 in statutory damages for each violation of 47 U.S.C. § 227(b)(1)(A), for a total of $1,000 per call.

42.   Plaintiff is also entitled to injunctive relief prohibiting such conduct in the future.

///

9

## SECOND CLAIM
### Knowing and/or Willful Violations of 47 U.S.C. 227

43.   Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

44.   The foregoing acts and omissions of Defendant constitute numerous and multiple willful violations of the TCPA, and specifically, 47 U.S.C. §227(c)(5), and (b)(1)(A).  At all times, Defendant knew that it was telemarketing to Plaintiff in spite of his number being on the do-not-call registry and in spite of his repeated requests that Defendant stop calling.  At all times, Defendant knew its conduct was illegal, as evidenced by the spoofed caller ID, refusal to initially tell Plaintiff the name of the company, and continued calls.

45.   As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff is entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, or $3,000 per call.

46.   Plaintiff is also entitled to injunctive relief prohibiting such conduct in the future.

### Prayer For Relief

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant:

### First Cause of Action for Negligent Violations

As a result of Defendant's negligent violations of 47 U.S.C. § 227(b) and (c), Plaintiff seeks $1,000.00 (one-thousand dollars) in statutory damages, for each and every call, injunctive relief prohibiting such conduct in the future, and any other relief the Court may deem just and proper.

### Second Cause of Action for Knowing and/or Willful Violations

As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b) and (c), Plaintiff seeks treble damages, as provided by statute, of $3,000.00 (three-thousand dollars) for each and every phone call, injunctive relief prohibiting

10

COMPLAINT

CASE NO.:_____

1    such conduct in the future, and any other relief the Court may deem just and proper.

2                            **Trial By Jury Demanded**

3          Pursuant to the Seventh Amendment of the Constitution of the United States of

4    America, Plaintiff is entitled to, and demands, a trial by jury on all counts so triable.

5

6    Date: August 1, 2016

7

8                                    **LAW OFFICES OF KIRA M. RUBEL**

9

10                            _____*/s/ Kira M. Rubel*_____
                             By: Kira M. Rubel, Esq.
11                            *Attorney for Plaintiff Steven Waterbury*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**COMPLAINT**
**CASE NO.:**_____